MIKE BEGLEY, *Plaintiff and Respondent,*
vs.
ACE NALL, *Defendant and Appellant.*

No. 2522; March 5th, 1946; 166 Pac. 2d 466)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of R. R. Rose of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of Marvin L. Bishop of Casper.

OPINION

Riner, *Justice.*

This is a direct appeal from an order of the district court of Natrona County adjudging the defendant and

appellant, Ace Nall, in contempt for violating a temporary injunction order issued by the court upon the application of Mike Begley, plaintiff and respondent. The parties will usually be referred to as aligned in the trial court.

On October 30, 1943, the plaintiff commenced an action in the district court above named against the defendant by the filing of a petition which, for the purposes of this appeal proceeding may be summarized as follows:

After alleging that the plaintiff is engaged in the sheep raising business in Natrona County, Wyoming, that he is the owner or lessee of certain described lands which grow hay, wild grasses and other crops used by and necessary to plaintiff in the conduct of his said business, it is stated that these lands constitute a part of the fall and winter range for plaintiff's sheep and being near to other holdings of the plaintiff are of special value to him; that in order for plaintiff to successfully operate his business his sheep must have good feed, water, and land upon which to graze without interference by strange cattle and that these lands should not be over-run by cattle nor fed off, over-grazed or trampled down by other live stock.

Paragraphs (4 and 5) of plaintiff's petition read verbatim as follows:

"That said defendant is the owner of about forty head of cattle plus his (1943) calves. That said defendant is employed by the Sinclair Oil Company and also operates a dairy adjacent to the lands of plaintiff. That said defendant uses one of the buildings owned by said Sinclair Oil Company as a dairy barn, but has no land either as owner or lessee on which to run, graze, water and feed his said livestock. That said defendant for several months last past has been deliberately herding, grazing and maintaining his cattle upon and depasturing the said lands of plaintiff and continues to herd,

graze and maintain his cattle upon and depasture said lands of all the grass and other feed thereon.

"That defendant has known for many months that plaintiff is the lessee from the United States of America under what is commonly known as the Taylor Grazing Act, 43 U. S. C. A. 315 as amended, and entitled to the exclusive grazing privileges of all the above described lands. That the said grazing lease issued by the United States to plaintiff contains a specific provision that the lease is subject to cancelation if plaintiff overgrazes said lands or permits the same to be overgrazed. That the grazing of said lands by defendant's cattle will cause said lands to be overgrazed and plaintiff is afraid the United States will cancel his said lease."

It is also alleged in said petition that since the passage of the Taylor Grazing Act, aforesaid, all of the grazing lands in Natrona County, Wyoming, owned by the United States have been leased to sundry live stock owners for grazing purposes and there is no more "free open government range for the grazing of livestock"; that defendant was personally notified in writing not to trespass upon said lands or to permit his live stock to enter upon, graze or water upon them and to, forthwith, remove his cattle therefrom; that, notwithstanding this notice, the defendant refused to remove his cattle therefrom and these animals continued to graze upon and depasture said lands; that these acts of the defendant have been malicious and willful; that in consequence plaintiff will soon have no place to graze his sheep and this will require him to purchase supplemental feed for his live stock; that plaintiff fears that the defendant's animals will continue to graze and depasture said lands unless restrained by court order and that plaintiff has no adequate or speedy remedy at law. Damages and a restraining order were requested by plaintiff's petition to prevent these continuing trespasses and also a mandatory injunction requiring de-

fendant, forthwith, to remove his live stock from said premises. The petition was positively verified.

Upon the filing of this pleading an injunction order was issued by the court the material portions of which provided that the defendant, "his associates, servants, agents, representatives and employees, and each and all of them, be and they are hereby enjoined and restrained from herding, bringing, maintaining or permitting any cattle, or other livestock, or in any manner trespassing upon" the land involved and that "said defendant, his agents, servants and employees, are hereby ordered forthwith to remove his cattle and other livestock from said lands and premises and to make no further trespass upon said lands; and from entering upon or trespassing upon, or in any manner injuring or damaging said premises and the grass, hay and herbage growing thereon." The order directed further that it should become operative upon plaintiff's giving a cash bond in a stated amount to be approved by the clerk of the court. This bond was, as we understand, duly given and approved.

November 23, 1943, the defendant filed his answer wherein he admits that he owns certain cattle and certain land. He alleges that plaintiff's lands are not fenced and if his cattle grazed thereon it was due to the failure of the plaintiff to enclose his land. The answer includes a counterclaim not here involved. The cause does not yet appear to be at issue on the merits.

It also appears that on September 15, 1944, after a hearing before the court upon the claim of plaintiff and the proofs submitted, that the defendant had theretofore violated the injunction order and had been found guilty of contempt, being punished by a stated fine imposed. November 20, 1944, plaintiff filed another affidavit which also asserted additional violations of the order, aforesaid, by the defendant, and on December 1,

1944, another hearing was had, evidence presented and arguments of counsel submitted to the court, with the result that another order was made and entered December 27, 1944, finding the defendant again guilty of violating the injunction order issued October 30, 1943. From this order this appeal is prosecuted.

No motion to dissolve the injunction order, aforesaid, has thus far been made by the defendant and that order remains in full force and effect so far as this record discloses.

Appellant presents the point in his brief and argument that the owner of cattle has a "right to permit them to run at large; and no actionable trespass is committed by such animals running at large, straying upon unenclosed land".

He insists that he did not "herd or even intentionally permit them to trespass thereon".

Our attention is directed to the rule annotated in 22 A. L. R., 1256, et seq., that:

"The rule has been laid down in many jurisdictions that the inability of an alleged contemner, without fault on his part, to render obedience to an order or decree of court is a good defense to a charge of contempt for the disobedience of the order or decree."

The same annotation, however, also says:

"It is well settled that, where a person seeks to satisfy the court that his failure to obey an order or decree was due entirely to his inability to render obedience, the burden is on him to establish that fact."

The point suggested above is a question of law which has to do with the merits of the action; the other propositions advanced are questions of fact which have either been determined adversely to appellant by the trial court upon sufficient proof as it thought or will be disposed of on the trial of the merits of the action. We

regard them as not subject to investigation at this time or upon the record now before us.

The principles which we think must control the disposition of the matter as it, at present, is submitted here, are set forth in general statements of the law regarding the violation of the injunctive process of the courts as announced in the following decisions briefly reviewed hereinafter. All of them were cases involving the matter of punishment for contempt in violating injunction orders. Very many other decisions to the same effect could easily be supplied.

The Supreme Court of Pennsylvania, in Bowers vs. Reitz, 315 Pa. 310, 172 Atl. 707, 709, says that:

"Defendant was properly held in direct contempt of the court below in his refusal to obey the injunction. Despite his argument to the contrary, he would, by complying, have sacrificed none of his legal rights. Scott v. Sheehan, supra. (145 Cal. 691, 79 P. 353, 354) His contention that the court was without jurisdiction to issue an injunction and that, without jurisdiction, the decree was void and consequently he could not be adjudged in contempt is based on a misapprehension of the meaning of the word 'jurisdiction' in this connection. The court below had jurisdiction over the parties (Allegheny Bank's Appeal 48 Pa. 328) and over the general subject involved (32 C. J. 286, § 454). 'Where the court has jurisdiction, the fact that the injunction * * * is erroneous, or was improvidently granted or irregularly obtained, is no excuse for violating it; and this rule applies with equal force to a prosecution for contempt instituted for the purpose of punishing a person for disobeying an order of the court on the ground that its authority or dignity is in question, and one which is instituted to enforce the authority of the court in the administration of justice between litigants.' 32 C. J. 482, 484, § 833. 'If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the "judicial power * * *"

would be a mere mockery.' Gompers v. Buck's Stove, etc., Co., 221 U. S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874."

The case of Lyon & Healy, vs. The Piano, Organ, etc., Interantional Union, 289 Ill. 176, 124 N. E. 443, uses the following well considered language:

"Jurisdiction is the power to hear and determine the matter in controversy between parties, and if the law gives the court power to render a judgment or decree then the court has jurisdiction. Jurisdiction does not depend upon the correctness of the decision and is not lost by an erroneous decision. Where a court has before it a party complainant asking that an injunction issue on a bill stating a case belonging to a class within the general equity jurisdiction of the court, and also the party against whom the injunction is asked, the court has jurisdiction to decide whether an injunction ought to issue and the character of the injunction, and should the court err in ordering an injunction to issue when one ought not to issue or in ordering an injunction broader in its terms than is justified by the bill its decree will be reversed, but the error will be no defense to an attachment for contempt for violating the injunction. The error does not deprive the court of its jurisdiction and the decree is binding upon the defendant until vacated or set aside. (Franklin Union v. People, 220 Ill. 355.) A party may refuse to obey an order where the court had no jurisdiction to make it, but not on the ground that it was erroneously made. An order made in the exercise of jurisdiction, though erroneous, must be obeyed until modified or set aside by the court making it or reversed by an appellate court. (Court Rose Foresters of American v. Corna, 279 Ill. 605; Christian Hospital v. People, 223 id. 244.) There can be no doubt that the circuit court of Cook county had jurisdiction of the subject matter and the parties. It had jurisdiction to determine whether the bill was sufficient to justify the issue of an injunction and the character of the injunction which should issue. Whether the bill stated a cause of action for which an injunction should be granted, or whether the affidavits sufficiently establish the facts upon which an injunction should be

granted, are questions of no importance upon the hearing of a charge of contempt for violating the injunction which the court ordered. If the bill was insufficient it should have been tested by a demurrer and not by disobedience of the writ. (Court Rose Foresters of America v. Corna, supra.) If its averments were not true a motion should have been made to dissolve the injunction, but until it was dissolved the appellants were bound to obey it. The sufficiency of the bill is not before us for determination. Neither is the question whether the scope of the injunction is broader than the allegations of the bill. Those questions can arise only on a direct proceeding for the review of the order granting the injunction."

The Supreme Court of Illinois again in the very late case of Cummings-Landau Laundry Machinery Co. vs. Koplin et al., 386 Ill. 368, 54 N. E. 2nd, 462, remarked that:

"The punishment in this case was inflicted for the violation of the injunctional order of the court. It has been held repeatedly, by this and other courts, that upon a hearing for the violation of an injunction, the only question open for consideration is whether the court had jurisdiction in any event to grant the injunction, regardless of the fact that it may have been erroneously granted. If the case belongs to the general class of cases of which the court has jurisdiction, then it has jurisdiction to grant an injunction, although its order in granting the same may have been erroneously entered. The question of whether the court rightfully or erroneously granted the injunction is not open to litigation on a citation for contempt. If the court has jurisdiction of the cause, an injunction granted in the exercise of such jurisdiction must be obeyed. The only issue in the contempt proceedings is whether the injunction has been violated. * * * It has always been the rule that courts of equity have power, upon a proper showing, to preserve the status of the parties, as well as the subject matter of the litigation until its final determination. Neither the court nor the parties in interest, as a condition to the exercise of such power, must guarantee the final result. The rule, that, even though the court may

erroneously grant an injunction, the writ must be obeyed, is too well settled to admit of doubt."

As already indicated no move was made on the part of appellant to modify or dissolve the injunction order here in question. If he thought it erroneous or too broad he should have pursued that course. He had full knowledge of what he was required by it to do. His remedy was certainly not that of disobedience. There is abundant evidence in the record that he disregarded the terms of the order. The district court had jurisdiction both of the subject matter of the action and the parties thereto. Its order should have been obeyed so long as it remained operative.

In view of these considerations and the undoubted law as reviewed in the utterances of the eminent courts whose decisions have been above quoted there is only one proper result possible to be reached in this case.

The order of the district court of Natrona County, in question here, should be and is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.