UNITED MINE WORKERS OF AMER-
ICA, LOCAL 1972; United Mine Work-
ers of America International Union;
and 91 Individual Citizens of the United
States, Appellants (Defendants),

v.

DECKER COAL COMPANY, a joint
venture, Appellee (Plaintiff).

UNITED MINE WORKERS OF AMER-
ICA LOCAL UNION 1972 ("UMWA Lo-
cal 1972"); United Mine Workers of
America International Union ("UMWA
International"); and 91 Individual Citi-
zens of the United States ("91 Citi-
zens"), Appellants (Defendants),

v.

DECKER COAL COMPANY,
Appellee (Plaintiff).

Nos. 88–42, 88–83.

Supreme Court of Wyoming.

May 19, 1989.

Michael K. Shoumacher and Hardy H. Tate, Sheridan, Robert H. Stropp, Jr. of Stropp & Nakamura, Birmingham, Ala., and Thomas E. Towe, Billings, Mont., for appellants in case No. 88–42 and 88–83.

Hayden F. Heaphy, Jr. of Burgess & Davis, Sheridan, Warren L. Tomlinson, Jeffrey T. Johnson, and Sandra R. Goldman of Holland & Hart, Denver, Colo., for appellee in case No. 88–42 and No. 88–83.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GUTHRIE, J., Retired.

GOLDEN, Justice.

A parent labor union, its local administrative subsidiary, and ninety union members seek reversal of their contempt convictions arising out of a labor dispute with their employer. The convictions were founded on allegations that the two unions

and their individual members violated a preliminary injunction by blocking a state highway to prevent nonunion "replacement" workers from traveling to the employer's coal mine and by damaging the employer's pickup truck. The district court fined each union member $100 and suspended the fines on the condition that they would not further violate the injunction. The district court entered a judgment in favor of the employer and against the unions in the sum of $6,725.67 for property damages plus attorneys' fees incurred by the employer in prosecuting the contempt action. In addition to this assessment, each union was required to post a $40,000 bond subject to forfeiture if any further violations of the district court's order occurred.

The appellants are the United Mine Workers of America International Union (UMWAI), its administrative subdivision designated as the United Mine Workers of America Local Union No. 1972 (Local), and ninety individual union members. Appellee Decker Coal Company (Decker) operates a strip coal mine in Big Horn County, Montana, about twenty miles north of Sheridan, Wyoming. UMWAI and the Local represent most of the nonsupervisory employees at the Decker mine.

In their appeal, the ninety individual appellants assert that the district court found them in criminal, not civil, contempt and that those criminal contempt convictions must be reversed because the individual appellants were not properly notified that they were being charged with criminal contempt. UMWAI and the Local appeal their contempt convictions, asserting, among other issues, that the district court erred in

finding them in contempt for their members' actions.

We reverse the contempt convictions.

I

## ISSUES

In our disposition of these appeals, we shall discuss the following issues as expressed by appellants:

1. Whether the District Court erred in denying the individual Appellants, non-Defendants below, Motion to dissolve and dismiss show cause Orders and quash service where the show cause Orders served upon the individuals failed to identify them as persons against whom the Order was issued and failed to articulate the charges against them?

2. Whether the sanctions directed against the individual Appellants amounted to an improper adjudication of criminal contempt against these individuals?

3. Whether the district Court erred in judicating the International and Local 1972 in contempt of Court? [1]

Appellants raised three additional issues arising from the district court's contempt order and its amendment. They are stated in this way:

4. Whether the District Court's Order requiring the Unions to post $40,000.00 bonds which would be forfeited upon future violations of the preliminary injunction by the Unions or any members, agents, representatives, employees or persons acting in concert with them, violates Section 27–7–107 of the Wyoming statutes?

---

1. Appellee's statement of the issues follows:
 1. Whether the individual Appellants, who were served with copies of the Order to Show Cause, received notice and had an opportunity to be heard before the District Court found them in contempt?
 2. Whether the conditional, remedial fines imposed on the individual Appellants amounted to a proper adjudication of civil contempt?
 3. Whether the District Court properly found the UMWA International and Local 1972 in contempt of court when their officers and agents participated in unlawful activities?

 4. Whether Appellants may raise for the first time on appeal the issue of the validity of the security posting and forfeiture provisions of the District Court's order?
 5. Whether the District Court's order restricting the International's strike activities until it posted a bond was proper?
 6. Whether the District Court's order permitting local law enforcement officials to enforce the amended preliminary injunction is consistent with due process requirements?

5. Whether the District Court's Order restricting the strike activities of the Unions and their members until the International posts a $40,000.00 bond violates the right to free speech and assembly guaranteed by the First Amendment?

6. May a District Court delegate its judicial function of enforcing the injunctive Orders of the Court, as well as the determination of whether such injunction has been violated, to a Sheriff, police officer or other law enforcement officer?

During oral argument in this court, the parties informed the court that on December 8, 1988, the district court, acting on and pursuant to the parties' agreement, had entered its Order Modifying Preliminary Injunction, Amended Preliminary Injunction, and Contempt Orders. The modification order deleted those provisions of the contempt order and its amendment requiring the unions to post bonds and providing for forfeiture upon future violations, imposing restrictions on the unions' strike activity until UMWAI posted its bond and allowing law enforcement officials to enforce the injunction. In contrast to appellee Decker's position that this modification order renders moot these three additional issues, appellants urge us to consider them since they are capable of repetition and would always evade review because of their "short-lived" nature in disputes of this kind.

In our judgment, the parties' agreement and the modification order render these additional issues moot. *In Interest of AJ*, 736 P.2d 721, 723 (Wyo.1987). Cf., *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988). Accordingly, we decline to consider them.

## II

## FACTS

On October 1, 1987, the parties' collective bargaining agreement expired. Since that day the parties have been engaged in a labor dispute.

Because of alleged unlawful activities during union demonstrations on October 21 and October 23, 1987, giving rise to allegations of rock throwing, property damage and blocked access to Decker facilities, Decker filed a complaint in the district court on October 23, 1987, against UMWAI, the Local, eight specifically named individuals in both their individual and representative capacities and John Does and Jane Does in both their individual and representative capacities, seeking a temporary restraining order, a preliminary injunction, a permanent injunction and damages. Decker also filed a motion for a temporary restraining order against the same defendants. The Sheridan County sheriff served a notice of the hearing of Decker's action on Mr. Larry Deeds as president and agent for service of the Local and on one Tom Wells. At 7:30 p.m., October 23, 1987, the district court issued a temporary restraining order against those defendants named in the caption of Decker's action. On October 27, those defendants filed a counterclaim against Decker, seeking injunctive relief to prevent Decker from interfering with the defendants' alleged lawful labor activities.

On November 4, 1987, after several days of hearing the district court entered its preliminary injunction against those defendants named in the caption of Decker's action, restraining them, in pertinent part, from damaging Decker's property and from impeding Decker employees' travel to and from work at the mine. On December 10, 1987, in the same action in which the November 4 preliminary injunction issued, Decker filed a motion for an order to show cause why UMWAI, the Local and the ninety individual appellants whose names were listed on an exhibit A attached to the motion, "should not be adjudged in civil contempt of this Court * * * for having violated and disregarded the terms of said Preliminary Injunction * * *." In its motion Decker alleged that on November 10, 1987, "Defendants and persons acting in concert with them (exhibit A purported to be a list of persons present and participating)" blocked Wyoming State Highway 338 (the Decker road) about eight miles north of the city of Sheridan, impeding Decker employ-

ees' travel to their place of work at the mine.

According to the motion, Decker property was damaged in the amount of $6,725.67, and law enforcement personnel arrested fifty-eight individuals. In addition to seeking the district court's show cause order, Decker asked the court "to order that Defendants purge themselves of said contempt by payment to [Decker] of the sum of $6,725.67, together with all costs of this proceeding, including reasonable attorney's fees; and to punish said Defendants and their individual officers and members, for such contempt in such manner as the Court deems just and proper."

On the same day that Decker's motion was filed, the district court in its order to show cause ordered UMWAI, the Local, "and each individual named on Exhibit A" attached to the order to appear before the court on December 28, 1987,

> to show cause * * * as to why said Defendants should not be held in civil contempt of Court for disobeying and disregarding the provisions of the [November 4, 1987, preliminary injunction]. Specifically, why said Defendants have impeded travel by [Decker's] employees to and from work at [Decker's] mine by blocking Wyoming State Highway 338; why said Defendants have damaged [Decker's] property; * * * why said Defendants should not be ordered to pay [Decker's] damages and reasonable attorney's fees, and court costs as a result of having to bring this action; why this Court should not provide such other and further relief as it deems just and proper.

Exhibit A attached to this order listed ninety-two individuals allegedly present and participating in the highway blocking incident.[2] Although the Sheridan County sheriff purportedly served most of these individuals with a copy of the show cause order, appellants claim, and Decker concedes, that the sheriff did not serve any of these individuals with a copy of Exhibit A.

On December 28, 1987, an attorney, purporting to make a special appearance on behalf of the individuals whose names were listed on Exhibit A, moved to dissolve and dismiss the show cause order and to quash its service on the grounds that they were not served with a copy of Exhibit A. He asserted it was not attached to the copies of the show cause order served on these individuals by the sheriff and that, therefore, they had not been given proper notice of the contempt charges against them.

On December 28, 1987, the district court in chambers considered and denied the individual appellants' motion to dissolve and dismiss the show cause order and to quash its service. Having denied that motion, the district court convened and conducted the hearing on the show cause order. At the start of the hearing, several attorneys were present. Two represented UMWAI and the Local and one appeared for the ninety individuals whose names were on Exhibit A. The attorneys for the unions declined to make an opening statement; however, during the taking of testimony, they conducted limited voir dire examination and cross-examination of several Decker witnesses. The attorney for the ninety individuals reserved and then never gave an opening statement; he, too, conducted limited voir dire examination and cross-examination of several Decker witnesses. Counsel for the unions and the ninety individuals gave a closing argument, but did not present witnesses; Decker presented witnesses and gave a closing argument.

After closing arguments, the district court orally announced its findings, conclusions, and judgment. The next day the district court entered its written order entitled, "Second Order Re: Contempt of Preliminary Injunction." Appellants direct us to two material differences between the findings, conclusions, and judgment as orally announced at the hearing's conclusion on December 28, 1987, and as they appear in the next day's written order. In view of our disposition of this appeal, we

---

**2.** Exhibit A, as amended, excluded two individuals, leaving ninety who seek reversal of their contempt convictions.

need not address issues raised concerning those differences. Suffice to say, the written order found UMWAI, the Local, and ninety individuals "in civil contempt" of the November 4, 1987, preliminary injunction. Referring to the ninety individual contemnors, the court ordered each "shall be assessed a fine in the amount of $100.00, and that such fine shall be suspended on the condition that there is no further violation by any of those individuals of the Preliminary Injunction entered in this matter."

As to UMWAI and the Local, the court ordered that Decker "shall have judgment against [them] for damages resulting from the violation of this court's Preliminary Injunction in the amount of $6,725.67, plus attorney's fees incurred by [Decker] in the prosecution of this matter in an amount to be determined by this Court or by agreement of the parties." The district court's modification entered on December 8, 1988, pursuant to the parties' agreement informs us that the sum of $20,339 represents the amount of damages and attorneys' fees awarded by the district court to Decker pursuant to the contempt order in question and an earlier one which is not before us.

### III

### THE LAW OF CONTEMPT

A considerable body of case law exists from which we shall select the principles of contempt law to resolve the issues presented. The Wyoming decisions which are particularly helpful are *Connors v. Connors,* 769 P.2d 336 (Wyo.1989); *Tracy, Green & Company v. Warner,* 704 P.2d 1306 (Wyo. 1985); *Anderson v. Anderson,* 667 P.2d 660 (Wyo.1983); *Horn v. District Court, Ninth Judicial District,* 647 P.2d 1368 (Wyo.1982); and *Garber v. United Mine Workers of America,* 524 P.2d 578 (Wyo. 1974). Federal decisions which have been informative are *Hicks on Behalf of Feoick v. Feoick,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *Gompers v. Buck's Stove & Range Company,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

As an appellate court we begin to fulfill our obligation and decide as a matter of law whether a contempt is civil or criminal by first considering a variety of factors. In *Connors* we said, "The major factor * * * is the purpose for which the power is exercised." *Connors,* 769 P.2d at 343. Expressing the idea of that major factor somewhat differently, we said in *Anderson,* 667 P.2d at 662, we would "determine the nature of a contempt based on the manner in which it occurred and the reasons why a particular penalty was imposed." Earlier, in *Horn,* 647 P.2d at 1372, we identified the decisional factor to be "the type of punishment to be imposed." From the United States Supreme Court, we are informed that "the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford." *Hicks,* 485 U.S. at ——, 108 S.Ct. at 1429, 99 L.Ed.2d at 731. Character of relief and type of punishment are synonymous. In *Gompers,* 221 U.S. at 441, 31 S.Ct. at 498, 55 L.Ed. at 806, the Court stated that the character and purpose of the punishment imposed for the contemptuous act in question often help to distinguish between civil and criminal contempt. In that case, the Court offered a simple test by which to determine the character of the punishment: remedial punishment is punishment imposed because the contemnor refused to do an affirmative act but which will be discontinued as soon as the contemnor does the affirmative act required; punitive punishment is punishment imposed because the contemnor did something he was expressly ordered not to do. *Id.,* 221 U.S. at 443, 31 S.Ct. at 498–99, 55 L.Ed. at 806. Conversely, punitive punishment treats the contemnor's doing what he had been expressly told not to do as being in defiance of the authority which issued the command. *Id.* The difficulty in classifying a particular contempt as either civil or criminal in nature is somewhat enhanced because each form of punishment/relief has incidental effects. *Id.,* 221 U.S. at 443, 31 S.Ct. at 498, 55 L.Ed. at 806. Remedial punishment coerces the contemnor to perform the affirmative act required, but

simultaneously vindicates the court's authority. Punitive punishment punishes the contemnor's completed act of disobedience and vindicates the court's authority, but also benefits the complainant-opposing party because the punished contemnor is less likely to repeat the disobedient act. *Id.*

In summary, then, we must analyze the controlling facts on this issue with these factors in mind:

1. In what manner did the contempt happen, that is, did the contemnor refuse to do an affirmative act or did the contemnor do that which he was ordered not to do;

2. what was the substance of the proceeding;

3. what kind of punishment was imposed; and

4. for what reasons did the court impose that kind of punishment.

Within some of these factors certain caveats exist. Thus, concerning the substance of the proceeding, that a private party initiates the contempt proceeding does not alter that which is found to be criminal in nature. *Anderson,* 667 P.2d at 663. And, that the court ordered the contemnor to make the contempt payment to the private party does not change that which is found to be criminal in nature. *Id.* Also, that the court suspended determinate punishment upon the condition of the contemnor's obedience of the court's orders does not make the punishment/relief civil in nature, because a suspended punishment, without more, remains determinate. *Hicks,* 485 U.S. at ——, 108 S.Ct. at 1433, 99 L.Ed.2d at 736 n. 11; and *Garber,* 524 P.2d at 579.

## IV

## NATURE OF THE CONTEMPT

Our analysis of the facts of consequence in light of the factors and caveats which come into play requires us to conclude that the substance of the contempts in this case was criminal in nature, despite the district court's characterizing it as civil in nature.

A. *In what manner did the contempts happen?*

The contemnors' alleged conduct was blocking a highway which impeded the travel of Decker's employees to the mine and damaging Decker's property. The district court's preliminary injunction commanded the unions and their members not to do those particular acts. Therefore, the alleged contemptuous conduct was the doing of the very acts which the district court had forbidden.

B. *What was the substance of the proceeding?*

Decker, a private party, initiated the contempt proceeding by filing a motion seeking the district court's show cause order. In that motion, Decker recited the alleged contemptuous conduct and then stated "Defendants have committed a contempt of the authority of this Court," and that "Plaintiff has been damaged in the sum of $6,725.67 * * *." In the motion's prayer for relief, Decker asked the district court for a show cause order requiring the contemnors to show cause why they should not be held in "civil contempt of this Court," for its judgment that the contemnors were in contempt of court for having violated the injunction, for its order that they purge themselves of contempt by paying Decker $6,725.67, together with all costs including reasonable attorney's fees, and for its punishment of the contemnors for their contempt "in such manner as the Court deems just and proper."

After the district court issued its show cause order and conducted the hearing, it announced it had found the contemnors in civil contempt of the injunction. In its oral announcement to the parties at the hearing's conclusion, the district court said the object of the demonstration, to prevent Decker vehicles from going to the mine, "was in direct violation of this Court's order"; the demonstration was arranged by UMWAI and the Local "in direct violation of the Order of this Court"; that a Decker pickup truck "was damaged by people participating in this demonstration at the behest of the Local and of [UMWAI], so I'm

going to assess damages * * * of $6,725.67" and that attorney fees will be added to that sum. The district court assessed each individual a $100 fine "suspended on the condition that there is no further violation by any of those individuals of the Preliminary Injunction * * *."

 These facts persuade us that the substance of the contempt proceeding was to punish the contemnors for committing direct violations of the district court's injunction and to provide compensation to Decker as a private litigant for its property damage by the contemnors during their direct violation of the injunction. Where both criminal and civil relief are imposed in the same proceeding, as here, we recognize that "the criminal feature of the [contempt] order is dominant and fixes its character for purposes of review." *Connors*, 769 P.2d at 345 (quoting *Hicks*, 485 U.S. at ——, 108 S.Ct. at 1433 n. 10, 99 L.Ed.2d at 736). Decker's having initiated the contempt proceeding does not alter that which is found to have been criminal in nature. *Anderson*, 667 P.2d at 663. That the district court ordered UMWAI and the Local to make the contempt payment of damages to Decker, a private party, does not alter that which is found to have been criminal in nature. *Id.* Finally, the district court's having suspended the determinate punishment of a $100 fine upon the condition of the individual contemnors' obedience of the court's orders does not make the punishment civil in nature because a suspended punishment, without more, remains determinant. *Hicks*, 485 U.S. at ——, 108 S.Ct. at 1433, 99 L.Ed.2d at 736 n. 11; and *Garber*, 524 P.2d at 579.

### C. *What kind of punishment was imposed?*

As previously mentioned, in its contempt order the district court imposed on each individual a $100 fine and awarded Decker a judgment against UMWAI and the local for damages in the amount of $6,725.67, plus Decker's attorneys' fees. In our view, the district court imposed both punitive and remedial punishment against the contemnors. The $100 fine against the individ-

uals was punitive. The $6,725.67 damages award, plus attorneys' fees, against the unions was both remedial and punitive. The attorneys' fees assessment seems more punitive than remedial in nature, considering that a court in a civil action may not award attorney's fees to the prevailing party in the absence of a contract or specific statutory provision. *NL Industries, Inc. v. Dill*, 769 P.2d 920 (Wyo.1989). The parties here had no such contract. The statute governing penalties which may be imposed for disobedience of an injunction does not contain any provision for the award of attorney's fees. W.S. 1–28–107 (June 1988 Repl.) As we said before, where both criminal and civil relief are imposed in the same proceeding, the criminal feature is dominant and determines its character for purposes of review. *Connors*, 769 P.2d at 345 (quoting *Hicks*, 485 U.S. at ——, 108 S.Ct. at 1433 n. 10, 99 L.Ed.2d at 736.

### D. *For what reasons did the court impose that kind of punishment?*

The district court imposed the $100 fine and the attorneys' fees assessment to vindicate the court's authority and to punish the contemnors for completed acts of direct disobedience to the court's injunction. The district court awarded property damages to compensate Decker as a private litigant. For purposes of review, the criminal feature is dominant. *Id.*

### V.

### DUE PROCESS RIGHTS

 Having determined that the contempts in question were criminal in nature, "we must determine whether [the contemnors were] afforded [their] due process rights in the proceeding which resulted in the [order] of contempt." *Connors*, 769 P.2d at 345. Those due process rights are identified in W.R.Cr.P. 41(b), because the contempt occurred outside the presence of the district court. Under that rule, the contemnor must be given notice of both the essential facts constituting the criminal contempt charged and the criminal nature

of the charge. The district court can give this required notice in one of five ways: (1) orally in open court in the defendant's presence; (2) by an order to show cause on the prosecuting attorney's application; (3) by an order to show cause on the application of an attorney appointed by the court for that purpose; (4) by an order of arrest on the prosecuting attorney's application; or (5) by an order of arrest on the application of an attorney appointed by the court for that purpose. *Id.* Whichever way the district court gives the required notice, the notice shall also state the time and place of the hearing and shall allow the person to whom it is directed a reasonable time for the preparation of the defense.

Mindful of these due process rights, we address first the common argument made by the individual contemnors that the notice to them, in the form of the district court's show cause order, was defective. The district court issued that order on Decker's application in the form of Decker's motion for the show cause order. The district court had not appointed Decker's attorneys for that purpose. From this we conclude that the district court did not use any one of the five ways to give notice prescribed by the provisions of W.R.Cr.P. 41(b).

■ Examining the show cause order itself, which was served on each of the contemnors, we find that it does not, as it must, inform the individual contemnor of the criminal nature of the contempt with which he is charged. The order's caption is entitled the same as the caption in the original cause filed by Decker seeking equitable relief in the form of an injunction against various specifically named defendants. The show cause order does not identify the defendants named in that caption as the ones to whom it is directed; instead, that order specifically refers to an attached exhibit A which was a list of the names of the alleged individual contemnors. The record reveals, however, that the sheriff did not serve any of these individual contemnors with a copy of that list. The attorney for these individual contemnors entered a special appearance challenging notice. He moved to dissolve and dismiss the show cause order and to quash its service because the individual contemnors had not been served with a copy of the list of names referred to in that order. Because of this defective service, he asserted, the individuals had been denied due process and the district court had no personal jurisdiction over them.

■ Challenging that position, Decker argues that the attorney for the individual contemnors waived his special appearance and, thus, made a general appearance subjecting his clients to the district court's jurisdiction when: 1) he moved for dismissal along with his motion to quash service; 2) after the district court denied his motions and conducted the hearing on the merits, he participated in cross-examination and voir dire examination of opposing witnesses; and 3) he made a closing argument. We reject Decker's waiver argument. In *Vanover v. Vanover,* 77 Wyo. 55, 66–67, 307 P.2d 117, 121, 62 A.L.R.2d 931 (1957), decided before the adoption of the Wyoming Rules of Civil Procedure, we held:

> [W]here the defendant has properly made special appearance for the sole purpose of objecting to the jurisdiction of the court over his person because of defective process or improper service of process, and the court has ruled adversely upon his objection, such a defendant does not waive his rights under such special appearance by persisting in defense of the action against him upon the merits, at least, where, as in this case the defendant continued at every step in the proceeding to either expressly reserve or to affirmatively reassert the objection.

Following the adoption of the Wyoming Rules of Civil Procedure, we said in *State ex rel. Sheehan v. District Court of Fourth Judicial District, in and for Johnson County,* 426 P.2d 431, 435–36 (Wyo. 1967):

> Under code pleading the defendant was required to appear specially to assert a defense founded upon insufficiency of process. An appearance for any other purpose was general and thereby

submitted the defendant to the jurisdiction of the court. *Honeycutt v. Nyquist, Petersen & Co.*, 12 Wyo. 183, 74 P. 90; *Public Service Commission of Wyoming v. Russell*, 51 Wyo. 463, 68 P.2d 597, 601–602. Although this strict rule of pleading has been changed under our rules of procedure, it is still necessary for a defendant to question the jurisdiction of the court over his person at his earliest opportunity. Otherwise such a defense will be considered to be waived.

Subdivision (b) of Rule 12, W.R.C.P., enumerates seven defenses which may at the option of a pleader be made by motion. One of those defenses is lack of jurisdiction over the person. Then, under subdivision (g) of Rule 12, it is specified a party who makes a motion under this rule may join with it the other motions therein provided for and then available to him. Following this authorization the rule states, in pertinent part, this:

> "* * * If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on any of the defenses or objections so omitted * * *."

Subdivision (h) of Rule 12 also states that a party waives all defenses and objections which he does not present by motion or, if he has made no motion, in his answer or reply. Certain exceptions to such waiver are set out, but none of the exceptions relate to a lack of jurisdiction over the person. It is evident, therefore, that the result is the same under our rules of procedure as it was under code pleading as far as an objection to the court's jurisdiction over the person is concerned, except that a defendant can raise the objection by motion or answer without appearing specially. If a defendant makes one or more motions permitted under Rule 12(b), the defense of lack of jurisdiction over the person of defendant must be included or it will be waived. See *Orange Theatre Corporation v. Rayherstz Amusement Corpora-*tion, 3 Cir. 139 F.2d 871, 874; and *Carter v. Powell*, 5 Cir., 104 F.2d 428, 430.

This discussion is particularly applicable here where the defendants were faced with criminal, not civil, charges of contempt. Our examination of the record reveals that the individual contemnors' attorney, after the district court's adverse ruling on his objection to that court's jurisdiction over his clients, continued to reserve and reassert his objection at the beginning and the ending of the contempt hearing. Consequently, we find no waiver of the special appearance under W.R.C.P. 12(h).

## VI

### SUBJECT MATTER JURISDICTION

In addition to the issue of personal jurisdiction we are compelled to discuss the issue of subject matter jurisdiction, which relates to both the individuals and the unions, even though this issue was raised neither below nor here by the parties. *Dee v. Laramie County*, 666 P.2d 957 (Wyo.1983); and *Matter of Estate of Harrington*, 648 P.2d 556, 559 (Wyo.1982). Unlike jurisdiction over the person, which can be waived, lack of subject matter jurisdiction cannot be. *Matter of Contempt Order (Anderson)* 765 P.2d 933, 936 (Wyo. 1988). In this last cited case we reversed an attorney's conviction of constructive criminal contempt because the district court lacked subject matter jurisdiction. We reiterate:

> It is fundamental, if not axiomatic, that, before a court can render any decision or order having any effect in any case or matter, it must have subject matter jurisdiction. Jurisdiction is essential to the exercise of judicial power. Unless the court has jurisdiction, it lacks any authority to proceed, and any decision, judgment, or other order is, as a matter of law, utterly void and of no effect for any purpose. Subject matter jurisdiction, like jurisdiction over the person, is not a subject of judicial discretion. There is a difference, however, because the lack of jurisdiction over the person can be waived, but lack of subject matter

jurisdiction cannot be. Subject matter jurisdiction either exists or it does not and, before proceeding to a disposition on the merits, a court should be satisfied that it does have the requisite jurisdiction. (Citations omitted).

*Id.*

Although the individuals and the unions did not raise the issue of subject matter jurisdiction, that issue is directly presented since we have found the contempts to have been criminal, not civil, in nature.

Two of our decisions which we find particularly on point in this analysis are *Tracy* and *Garber*. In *Garber*, we reviewed and set aside for lack of jurisdiction a district court's contempt order and bench warrant issued against several subpoenaed witnesses who had failed to appear for a hearing on an employer's complaint for a temporary injunction against a union arising out of a labor dispute. At the start of the hearing on the employer's complaint for injunctive relief, the district court determined that the subpoenaed witnesses in question were not present in court. The court directed the employer's attorney to prepare a show cause order directed to the nonappearing witnesses. The employer's attorney filed a motion for a contempt order and presented a show cause order to the district court; the court signed and entered the show cause order. That order, as here, bore the same caption as the underlying original cause seeking the injunctive relief. Five of the six alleged contemnors were served a copy of the show cause order and appeared without an attorney at the show cause hearing. They were not advised of the nature of the charges against them. The district court questioned them and found each of them guilty of contempt. A $50 fine and a thirty-day jail sentence were imposed with both punishments suspended on the condition that they obey the law and orders, mandates, and subpoenas issued by any court of general jurisdiction for one year. In the course of setting aside the contempt order, this court decided, contrary to the district court, the contempt was criminal, not civil, in nature. *Garber*, 524 P.2d at 579 n. 1, 580. We noted that the alleged con-

temnors would have been informed of the nature of the action through the caption of the cause had the contempt matter been filed as an independent action. In particular, we observed:

"As was said in 1911 in *Gompers v. Buck's Stove & Range Co.*, [221 U.S. 418, 446, 31 S.Ct. 492, 500, 55 L.Ed. 797], the matter should show the court or the public as a party. This is more than a mere matter of form, it advises the defendant that it is a charge and not a suit * * *. Proceedings in criminal contempts are independent criminal actions and should be conducted accordingly * * *."

*Id.* at 579.

Four years ago in *Tracy* we reversed a conviction of a constructive criminal contempt because the district court failed to follow W.R.Cr.P. 41(b) notice procedure in issuing the contempt citation. We said:

The failure of the court to file and have served such notice is comparable to the failure of a prosecutor to file an information or indictment. Without the notice the court never obtains jurisdiction to proceed. The court here lacked jurisdiction to cite appellant * * * with criminal contempt. Accordingly, we must declare the order of contempt null and void.

*Tracy*, 704 P.2d at 1308.

Our analysis of W.R.Cr.P. 41(b) and these cases leads us to conclude the district court failed to follow the necessary procedure in issuing the contempt citations to the individual contemnors and the union contemnors. This was, as we have found, a criminal contempt proceeding and should have been conducted as an independent criminal action. It was not, and the district court, therefore, never obtained jurisdiction to proceed. We hold the contempt orders against the individuals and the unions null and void.

Reversed.