In the Interest of C.N. and
J.N., Minor Children.

GN and CN, Appellants (Defendants),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. C–90–2.

Supreme Court of Wyoming.

Sept. 6, 1991.

Ronald G. Pretty, Cheyenne, for appellants.

Joseph B. Meyer, Atty. Gen., Michael Lee Hubbard, Sr. Asst. Atty. Gen., Richard E. Dixon, Asst. Atty. Gen., and James Mitchell, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

OPINION

MACY, Justice.

This is an appeal from two orders imposing monthly continuing fines on the parents of C.N. and J.N. after they were found to be in contempt of court for failure to comply with final disposition orders requiring them to undergo an evaluation and family assessment at a mental health center.

We reverse.

The parents raise the following issues for our review:

I. Does the Juvenile Court have the authority to require parents to go to counseling and evaluation at a Dispositional Hearing[?]

II. Can the Court order the parents to pay a $500.00 * * * fine per month until they comply with the court[']s order[?]

On August 14, 1989, the State filed separate petitions in juvenile court, alleging, *inter alia*, that C.N. and J.N. committed delinquent acts by breaking and entering into a fireworks stand and stealing fireworks which were located therein. On November 9, 1989, C.N., J.N., their court-appointed attorney, and their parents ap-

peared before the juvenile judge for an adjudicatory hearing on the petitions, at which time C.N. and J.N. admitted they committed the delinquent acts alleged in their respective petitions. The court immediately proceeded with the dispositional phase of the juvenile proceedings.

After examining the predisposition report submitted by the Wyoming Department of Probation and Parole, the court ordered that C.N. and J.N. be placed on probation for a period of two years. The disposition orders also ordered the parents to "undergo and cooperate with an evaluation and family assessment through the Southeast Wyoming Mental Health Center."

Following a show-cause hearing held on February 15, 1990, the court found the parents were in contempt of court for failure to attend counseling as they were ordered on November 9, 1989. The court ordered the parents to appear on February 22, 1990, to provide reports and data as to their financial condition. The parents retained counsel after the show-cause hearing, and he represented them at the February 22, 1990, hearing. The parents, through their attorney, moved to have the provision requiring them to attend counseling struck from the disposition orders on the grounds that the parents were not parties to the juvenile actions and that the court did not have authority to make such orders.

After the court declared that it did have the power to make such orders, it again found the parents in contempt of court and entered an order in each juvenile file fining the parents $500 per month until they purged themselves from the contempt by submitting themselves to the Southeast Wyoming Mental Health Center for the purpose of a family evaluation. After imposing the fine, the court found that the imposition of the fine was less intrusive than receiving a jail term or having the children removed from the home. It is from these orders that this appeal is taken.

The parents direct our attention to Wyo. Stat. § 14–6–229 (Supp.1989),[1] which, *inter alia*, provides what the court may or may not do after a juvenile is found to be a delinquent child. It is their contention that the statutory scheme of the juvenile court act, and § 14–6–229 in particular, does not permit the court in a disposition order to require them to submit themselves to evaluation.

The State directs us to Wyo.Stat. § 14–6–201(a)(xviii) (Supp.1991), which provides that parents are parties to a juvenile action, and to Wyo.Stat. § 14–6–203 (Supp.1991), which provides in part that the juvenile court has jurisdiction to order any party to perform any acts, duties, and responsibilities which the court deems necessary. Although the State recognizes that § 14–6–203 enumerates the powers generally conferred upon the court in the adjudicatory phase of the juvenile proceeding, it contends that these powers have operational effects throughout the dispositional phase of the proceedings. The State argues that for this Court to hold otherwise would be to hamstring juvenile courts in their efforts to fashion both initial and continuing orders of disposition according to the mandates of the juvenile court act and in the best interest of the juveniles. The State reasons that the juvenile court must have sufficient vestigial powers to allow assessment and evaluation of both the child and the family long after a final order of disposition has been entered.

Our applicable standard of review of statutes is well established:

"[A]ll portions of an act must be read in pari materia, and every word, clause and sentence of it must be considered so that no part will be inoperative or superfluous," *Hamlin v. Transcon Lines*, Wyo., 701 P.2d 1139, 1142 (1985), and a statute should not be construed to render any portion of it meaningless, or in a manner producing absurd results.

*Story v. State*, 755 P.2d 228, 231 (Wyo. 1988), *after remand* 788 P.2d 617, *cert. denied* —— U.S. ——, 111 S.Ct. 106, 112

---

1. Amended by 1990 Wyo.Sess.Laws ch. 24, § 1 effective July 1, 1990, and by 1991 Wyo.Sess.

Laws ch. 161, § 3 effective April 1, 1991, and ch. 196, § 1 effective March 4, 1991.

L.Ed.2d 76 (1990) (citations omitted). We have reviewed the juvenile court act in *pari materia* in light of the State's contention that, although § 14–6–203 enumerates powers available to the court in the adjudicatory phase, these powers should be available to the court in the dispositional phase. Section 14–6–203 provides in material part:

(a) The court has general jurisdiction in all matters and proceedings * * * concerning:

* * * * * *

(iii) The parents * * * of any minor alleged to be delinquent * * *[.]

* * * * * *

(b) Coincident with proceedings concerning a minor *alleged* to be delinquent, * * * the court has jurisdiction to:

* * * * * *

(ii) Order any party to the proceedings to perform any acts, duties and responsibilities the court deems necessary * * *[.]

(Emphasis added.)

■ If we were at liberty to consider only this statute, the State's contention and reasoning would be very persuasive. We have an obligation, however, to search for and examine other statutes within the act relating to the authority of the court to order parents of the juvenile to perform any acts, duties, and responsibilities as the court deems necessary. Section 14–6–229(f) provided in material part:

(f) As a part of any order of disposition * * *, the court may:

* * * * * *

(vii) As a condition of permitting the child to live in the home, order the child or his parents *with their consent* into counseling, treatment or another program designed to rectify problems which contributed to the adjudication.

(Emphasis added.) To ignore this provision would be to render it meaningless. We hold that, when a child is adjudged by the court to be delinquent and is permitted to live in the parents' home, the consent of the parents is required before the court has authority to order the parents to go to counseling or evaluation. The State's allegation that this holding will hamstring the court is not justified. Wyo.Stat. § 14–6–226(e) (Supp.1991) clearly provides that the court may continue a dispositional hearing for a reasonable time, not to exceed sixty days, to receive reports and other evidence bearing upon the disposition to be made. Any apprehension which the court may have regarding the conduct or fitness of the juveniles' parents could be satisfied within this interim, and a dispositional order could be fashioned in a manner to address the problem. It is also worthy of mention that C.N. and J.N. are not subject to return to the court relative to their delinquency unless they violate the terms or conditions of their probation. Their parents' refusal to submit themselves to counseling and evaluation is not one of those terms or conditions.

■ Although the court in this instance did not have authority to order the parents to submit themselves to counseling and evaluation, it did have jurisdiction of the parties [2] and of the subject matter of these proceedings.

If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of deci-

---

**2.** Wyo.Stat. § 14–6–201(a)(xviii) (Supp.1991) provides:

(a) As used in this act:

* * * * * *

(xviii) "Parties" include the child, his parents, guardian or custodian, the state of Wyoming and any other person made a party by an order to appear[.]

sions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed.

*State ex rel. Mix v. Newland,* 277 Or. 191, 560 P.2d 255, 260 (1977). The parents' failure to comply with the court order, notwithstanding that it may be erroneous, can constitute grounds for contempt of court. *Poljanec v. Freed Finance Company of Wyoming,* 440 P.2d 251 (Wyo.1968); *Begley v. Nall,* 62 Wyo. 254, 166 P.2d 466 (1946). *See also United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The remedy available to the parents was to appeal the order, not to make themselves the judges of the validity of the order by their inactivity. *Hodous v. Hodous,* 76 N.D. 392, 36 N.W.2d 554, 12 A.L.R.2d 1051 (1949).

> Whether the adjudication of contempt "survives the avoidance of [the] underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1342 (3d Cir.1976). [Footnote omitted].

*Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496, 499 (10th Cir.1980).

■ The purpose of a civil contempt is to compel a party to comply with a *lawful* order. *Horn v. District Court, Ninth Judicial District,* 647 P.2d 1368 (Wyo.1982). The purpose of a criminal contempt is to punish. *Id.; Tracy, Green & Company v. Warner,* 704 P.2d 1306 (Wyo.1985).

When the court found the parents were in contempt, it stated:

> What I'm trying to do is fashion a remedy that is the least intrusive. I think to withhold $500 a month until you decide to obey the court's order is one that is least intrusive, yet at the same time *it tends to accomplish a valid end; namely, to try to get [to] the bottom of this matter so that your sons can be adequately administered to while they are on probation.*

(Emphasis added.) The court imposed a $500 per month fine on the parents "until

such time as [the parents] decide to purge themselves." The parents "may purge themselves of further contempt by submitting themselves to the Southeast Wyoming Mental Health Center for the purpose of a family evaluation." The contempt decree was an attempt to force the family into counseling. The court made it clear that it had no intention to punish these parents. This remedial nature of the use of the coercive power of the court makes this a civil contempt. *Tracy, Green & Company,* 704 P.2d 1306. The order requiring the parents to enter counseling was not lawful. The contempt order cannot stand.

Reversed.

THOMAS, J., filed a specially concurring opinion.

THOMAS, Justice, concurring specially.

I agree with the result of reversal reached by the majority opinion. I would reach that result, however, by treating the case as one in which the trial court pursued the remedy of criminal contempt, but failed to proceed in a manner that would afford it jurisdiction over a criminal contempt proceeding.

We must recognize that, for this case, the authority to proceed in contempt is set forth in § 14–6–242, W.S.1977. This statute does provide a specific criminal penalty for failure to obey or perform any order. Other than the precise statutory recognition of an inherent power of the court, however, this case cannot be significantly distinguished from *United Mine Workers of America, Local 1972 v. Decker Coal Company,* 774 P.2d 1274 (Wyo.1989), and the line of Wyoming cases cited therein. Those cases are *Connors v. Connors,* 769 P.2d 336 (Wyo.1989); *Tracy, Green & Company v. Warner,* 704 P.2d 1306 (Wyo. 1985); *Anderson v. Anderson,* 667 P.2d 660 (Wyo.1983); *Horn v. District Court, Ninth Judicial District,* 647 P.2d 1368 (Wyo.1982); and *Garber v. United Mine Workers of America,* 524 P.2d 578 (Wyo. 1974).

This contempt proceeding was initiated by a Motion for Order to Show Cause why

the parents should not be held in contempt for failure to abide by the terms of the Order of Final Disposition. The motion was captioned in the juvenile case, and an Order to Show Cause simply advising the parents that they should appear "to show cause if any you have, why you should not be held in contempt of Court," also captioned in the juvenile proceeding, then was entered. After the hearing was held, the court entered an order finding the parents in contempt, and the court then entered an Order on March 13, 1990 providing, in pertinent part, as follows:

> "IT IS THEREFORE ORDERED that there shall be entered in this matter an Income Withholding Order for the amount of $500.00 per month; said payments shall be made by cash, certified check or money order to the Clerk of Court, First Judicial District, Cheyenne, Laramie County, Wyoming, on or before the first day of each month, beginning with the month of March, 1990; said payment is based on a take-home salary of $2,800.00, and shall be placed in an interest bearing account by the Clerk of Court, until further order of this court; *this payment is a continuing fine, to be treated as such by the Clerk of the District Court, to be disbursed to the Laramie School District Nos. 1 and 2 on an equal basis;* but not until the entry of a further order of this Court authorizing such disbursements; *the fine of $500.00 per month shall continue until such time as [parents] decide to purge themselves;*
> "THE COURT finds that this is the least intrusive remedy versus other options available in contempt proceedings, *such as a jail term* or having the minor children removed from the home; \* \* \*."
> (Emphasis added.)

This fine obviously is punishment for prior conduct.

In *UMWA Local 1972*, 774 P.2d at 1280, the court articulated the controlling factors on the issue of the nature of a contempt proceeding in this way:

> "1. In what manner did the contempt happen, that is, did the contemnor refuse to do an affirmative act or did the contemnor do that which he was ordered not to do;
> "2. what was the substance of the proceeding;
> "3. what kind of punishment was imposed; and
> "4. for what reasons did the court impose that kind of punishment."

While the order of the juvenile court, in this matter, might be perceived as encompassing both punitive and remedial punishment, there is no question that the fine was punitive. We noted, in *UMWA, Local 1972*, 774 P.2d at 1281, that:

> "\* \* \* Where both criminal and civil relief are imposed in the same proceeding, as here, we recognize that 'the criminal feature of the [contempt] order is dominant and fixes its character for purposes of review. *Connors*, 769 P.2d at 345 (quoting *Hicks*, [*v. Feiock*], 485 U.S. [624] at [639 n. 10], 108 S.Ct. [1423] at 1433 n. 10, 99 L.Ed.2d [721] at 736 [(1988)].'"

The applicable rule in this instance is one of subject matter jurisdiction, and it also is articulated in *UMWA, Local 1972*, 774 P.2d at 1284, as follows:

> "\* \* \* In *Garber*, we reviewed and set aside for lack of jurisdiction a district court's contempt order and bench warrant issued against several subpoenaed witnesses who had failed to appear for a hearing on an employer's complaint for a temporary injunction against a union arising out of a labor dispute. \* \* \* In the course of setting aside the contempt order, this court decided, contrary to the district court, the contempt was criminal, not civil, in nature. *Garber*, 524 P.2d at 579 n. 1, 580. We noted that the alleged contemnors would have been informed of the nature of the action through the caption of the cause had the contempt matter been filed as an independent action. In particular, we observed:
> > "'As was said in 1911 in *Gompers v. Buck's Stove & Range Co.*, [221 U.S. 418, 446, 31 S.Ct. 492, 500, 55 L.Ed. 797], the matter should show the court or the public as a party. This is more

than a mere matter of form, it advises the defendant that it is a charge and not a suit * * *. Proceedings in criminal contempts are independent criminal actions and should be conducted accordingly * * *.'

"Four years ago in *Tracy* we reversed a conviction of a constructive criminal contempt because the district court failed to follow W.R.Cr.P. 41(b) notice procedure in issuing the contempt citation. We said:

" 'The failure of the court to file and have served such notice is comparable to the failure of the prosecutor to file an information or indictment. Without the notice the court never obtains jurisdiction to proceed. The court here lacked jurisdiction to cite appellant * * * with criminal contempt. Accordingly, we must declare the order of contempt null and void.' *Tracy*, 704 P.2d at 1308.

"Our analysis of W.R.Cr.P. 41(b) and these cases leads us to conclude the district court failed to follow the necessary procedure in issuing the contempt citations to the individual contemnors and the union contemnors. This was, as we have found, a criminal contempt proceeding and should have been conducted as an independent criminal action. It was not, and the district court, therefore, never obtained jurisdiction to proceed. We hold the contempt orders against the individuals and the unions null and void."

This language describes precisely the situation of the parents in this case. No effort was made to invoke Rule 41(b), W.R.Cr.P. Instead, the contempt citation proceeded simply as an aspect of the juvenile court proceeding. In that guise, it perhaps could be sustainable if the relief were limited to civil contempt, but that obviously is not the case in this instance. The fact that the majority chooses to so label the case does not change the fact. There is no possibility of distinguishing this situation from the contempt proceedings described in our earlier cases.

There is yet another reason that the order of the district court should be reversed

in this case. The statutory authority to require the parents to "undergo and cooperate with an evaluation and family assessment through the Southeast Wyoming Mental Health Center" in an order of disposition in a juvenile proceeding is limited in this way:

"As a condition of permitting the child to live in the home, order the child or his parents *with their consent* into counseling, treatment or another program designed to rectify problems which contributed to the adjudication." Section 14–6–229(f)(vii), W.S.1977 (Cum.Supp.1990) (emphasis added).

In light of this statutory limitation, the legislature did not extend to the district court subject matter jurisdiction to enter the order it did against the parents. I cannot agree with the conclusion of the majority that the trial court was vested with subject matter jurisdiction to enter the order upon which the contempt proceeding was premised. *Matter of Contempt Order Issued Against Anderson*, 765 P.2d 933 (Wyo.1988). *See Begley v. Nall*, 62 Wyo. 254, 166 P.2d 466 (1946).

I agree that the order of the District Court must be reversed, but I would follow the foregoing reasoning and precedent to arrive at that result.