# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 84

APRIL TERM, A.D. 2025

July 29, 2025

|  |  |
|---|---|
| IN THE MATTER OF THE SANCTION FEE CHRISTOPHER GOETZ: | |
| CHRISTOPHER GOETZ, Defense Attorney for Jordan Ryan Borrego, | |
| Appellant, | S-24-0317 |
| v. | |
| THE STATE OF WYOMING, | |
| Appellee (Plaintiff). | |

*Appeal from the District Court of Campbell County*
*The Honorable Matthew F.G. Castano, Judge*

*Representing Appellant:*
   H. Michael Bennett, Bennett Law Group, P.C., Laramie, Wyoming.

*Representing Appellee:*
   Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and FOX,\* GRAY, FENN, and JAROSH, JJ.*

*GRAY, J., delivers the opinion of the Court; FENN, J., files a concurring in part and dissenting in part opinion.*

* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Attorney Christopher Goetz appeals from the district court's oral ruling holding him in contempt of court and its written order imposing monetary sanctions pursuant to Rule 801 of the Wyoming Uniform Rules for District Courts (U.R.D.C.).  We hold that the district court lacked jurisdiction to hold Mr. Goetz in indirect criminal contempt.  We reverse.

*ISSUES*

[¶2]         1.    Did the district court lack jurisdiction to hold Mr. Goetz
                    in indirect criminal contempt?

             2.    Did the district court lack jurisdiction to sanction Mr.
                    Goetz for violating Rule 801 of the U.R.D.C.?

*FACTS*

[¶3]    In August 2024, Mr. Goetz was appointed to represent a defendant in a felony criminal case.  Mr. Goetz requested a change of plea hearing in that matter, and the district court scheduled the hearing for October 10 at 9:30 a.m.  At 9:37 a.m. on October 10, the district court went on record to hear the change of plea.  The prosecutor and the defendant were present in court.  Mr. Goetz was not.  The district court observed, "Mr. Goetz . . . is not available at this time.  I am told he is in a preliminary hearing in circuit court."  The court noted that it had "received no motion to continue or other notice that there was any issue whatsoever," and took a recess until Mr. Goetz became available.

[¶4]    The district court went back on record at 10:16 a.m.  After Mr. Goetz apologized for being late, the district court responded:

> You don't apologize for being late.  You knew this was set.
> You knew you had a one-hour setting at nine o'clock.  In fact,
> you went beyond the one-hour setting at nine o'clock because
> I listened to the proceedings.  You just displayed a cavalier
> attitude toward the Court, and you've done it before.

The court then permitted Mr. Goetz to "lay a factual basis" for his tardiness.  Mr. Goetz had a preliminary hearing in circuit court on another matter that had been scheduled for 9:00 a.m.  He anticipated the hearing would end earlier than it did.  He explained that the plea agreement in that case had "fallen apart" and, as a result, at the hearing they unexpectedly had to cover "multiple witnesses" and "multiple issues."  He admitted that he did not ask anyone to inform the district court of the situation, nor did he seek leave to do so himself.  The district court stated that it was holding Mr. Goetz "in direct contempt

1

of this Court. To purge – well, punishment for the contempt is a fine of $100 to be paid to the clerk of district court upon this Court producing an order."

[¶5] Later that day, the district court entered a written order in the underlying criminal matter sanctioning Mr. Goetz pursuant to U.R.D.C. 801(a)(5) and (a)(8)(b). It found that Mr. Goetz did not inform the court of the scheduling conflict or that the circuit court hearing was going to last longer than expected, and his "actions demonstrate a cavalier attitude toward th[e] Court, the time and workload of opposing counsel and the time of his own client . . . ." The district court ordered Mr. Goetz to pay a $100 fine and to write a letter of apology to opposing counsel.[1] Mr. Goetz timely appeals.

## STANDARD OF REVIEW

[¶6] Issues of jurisdiction and the district court's authority to act are legal questions, which we review de novo. *Bunten v. State*, 2023 WY 105, ¶ 6, 537 P.3d 763, 764 (Wyo. 2023).

## DISCUSSION

[¶7] Mr. Goetz argues the district court lacked jurisdiction to convict him of indirect criminal contempt. The State contends that this Court does not need to address Mr. Goetz's argument because the district court did not hold Mr. Goetz in contempt; rather, it sanctioned him under U.R.D.C. 801, and it did not abuse its discretion when it did so. We address both arguments.

### I.   The district court lacked jurisdiction to convict Mr. Goetz of indirect criminal contempt.

[¶8] In its oral pronouncement from the bench, the district court stated that it was holding Mr. Goetz in direct contempt and that it would fine him $100 as "punishment." The next day, the district court entered its written order sanctioning Mr. Goetz pursuant to U.R.D.C. 801. Wyoming courts of general jurisdiction inherently hold the power of contempt. *Swain v. State*, 2009 WY 142, ¶ 13, 220 P.3d 504, 507 (Wyo. 2009); *Skinner v. State*, 838 P.2d 715, 723 (Wyo. 1992). Contempt of court is classified as either civil or criminal, and within each classification, as either direct (committed in the presence of the court) or indirect (committed outside the presence of the court). *Swain*, ¶ 13, 220 P.3d at 507.

---

[1] Mr. Goetz filed notice that he delivered an apology letter on October 11, 2024. Because Mr. Goetz already sent the letter of apology, his arguments regarding the letter are moot. *Elsner v. Campbell Cnty. Hosp. Dist.*, 2025 WY 37, ¶ 31, 566 P.3d 894, 905 (Wyo. 2025) (An issue is "moot when the determination of [the] issue will have no practical effect on the existing controversy."). We will not address these arguments.

A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. A civil contempt is generally intended to compel a party to comply with a lawful court order while a criminal contempt is punitive in nature and is enforced so the authority of the law and the court will be vindicated. Stated simply, the primary purpose of criminal contempt is to punish while the primary purpose of civil contempt is to coerce. Appellate courts are obligated to decide whether a contempt is civil or criminal based on the reasons for a particular penalty.

*Greer v. Greer*, 2017 WY 35, ¶ 27, 391 P.3d 1127, 1134 (Wyo. 2017) (quoting *Stephens v. Lavitt*, 2010 WY 129, ¶ 15, 239 P.3d 634, 638–39 (Wyo. 2010)); *see also Jensen v. Milatzo-Jensen*, 2013 WY 83, ¶ 7, 304 P.3d 969, 971 (Wyo. 2013) ("The purpose of a civil contempt is to compel a party to comply with a lawful order. The purpose of a criminal contempt is to punish." (emphasis removed) (citations omitted) (quoting *In Int. of C.N.*, 816 P.2d 1282, 1285 (Wyo. 1991))).

[¶9]    "The nature of the contempt charged governs the conduct of, and the procedures to be followed in, a contempt proceeding." *Swain*, ¶ 14, 220 P.3d at 508. Civil contempt proceedings are conducted as part of the case in which they arise. Both indirect and direct criminal contempt proceedings are criminal actions and must be conducted in accordance with W.R.Cr.P. 42. *Jensen*, ¶ 7, 304 P.3d at 971; *In re BD*, 2010 WY 18, ¶¶ 4–5, 226 P.3d 272, 273–74 (Wyo. 2010); *Swain*, ¶¶ 14–15, 220 P.3d at 508–09; *Horn v. Welch*, 2002 WY 138, ¶ 14, 54 P.3d 754, 759 (Wyo. 2002). "[A]n indirect criminal contempt action may not be pursued and treated simply as a component of the case giving rise to the contemptuous conduct. . . . [T]he failure to adhere to the separate and independent action rule constitutes a fatal jurisdictional defect which renders any judgment of contempt null and void." *BD*, ¶ 5, 226 P.3d at 274 (citing *Swain*, ¶ 17, 220 P.3d at 509; *United Mine Workers of Am. Loc. 1972 v. Decker Coal Co.*, 774 P.2d 1274, 1284 (Wyo. 1989)). In contrast, a direct criminal contempt proceeding "may be punished summarily if the judge saw or heard the conduct constituting the contempt and the conduct occurred in the immediate view or presence of the court. . . ." W.R.Cr.P. 42(b).

[¶10]   In this case, the court fined Mr. Goetz $100 to be paid to the court clerk, which is punitive and constitutes criminal contempt. *See Meckem v. Carter*, 2014 WY 52, ¶ 26, 323 P.3d 637, 645 (Wyo. 2014) ($100 fine could not "be considered compensatory, as it [was] to be paid to the court" and was therefore categorized as criminal contempt). Mr. Goetz was tardy. Tardiness, by its very nature, is conduct that occurs outside the presence of the court. Accordingly, the oral pronouncement of the district court holding Mr. Goetz in contempt, reflects indirect, not direct criminal contempt. *See In re Chandler*, 906 F.2d 248, 249–50 (6th Cir. 1990) (absence or tardiness alone cannot be contempt in the presence

3

of the court, summary contempt finding did not provide tardy attorney with proper criminal contempt procedure because "the court could not know why the attorney was late until the attorney arrived"); *Basore v. Basore*, 2002-Ohio-6089, ¶¶ 35–36, 2002 WL 31492316, at *4 (Ct. App. Nov. 6, 2002) (affirming indirect criminal contempt conviction of attorney for tardy arrival at hearing); *Wong v. Frank*, 833 P.2d 85, 90 (Haw. Ct. App. 1992) ("tardiness in appearing in court constitutes indirect contempt"); *Matter of Contempt in Int. of M.P.*, 452 N.W.2d 354, 358 (Wis. 1990) (being tardy or completely absent from a scheduled court proceeding "does not occur in the actual presence of the court" and is indirect contempt). Because Mr. Goetz's indirect criminal contempt was not prosecuted in a separate criminal action, the district court lacked jurisdiction to hold Mr. Goetz in contempt. *Swain*, ¶¶ 16–17, 220 P.3d at 509 (a district court lacks jurisdiction to hear an indirect criminal contempt proceeding in an underlying case in which the contempt arises).

## II. The district court lacked jurisdiction to sanction Mr. Goetz for violating Rule 801 of the U.R.D.C.

[¶11] The State argues that because the district court issued a written order imposing sanctions under Rule 801 and never filed a written judgment of contempt, the relevant question is whether the district court properly sanctioned Mr. Goetz under the U.R.D.C. We see the written Rule 801 order differently. In its written order, the district court memorialized its oral ruling by imposing the identical punishment announced in its oral ruling, but stating that it was sanctioning Mr. Goetz pursuant to Rule 801.[2] In other words,

---

[2] Rule 801 states:

> The district courts of Wyoming, in furtherance of the inherent power and responsibility of courts to supervise proceedings before them, shall hold attorneys to the following standards of professional behavior:
>     (a)    Standards of Behavior in Adjudicative Proceedings. —
>
>    .   .   .
>
>     (5)    **Attorneys** shall be reasonably punctual in their communications with all persons involved in the adjudicative process and **shall appear on time for all duly scheduled events involved in the adjudicative process**, unless excused or detained by circumstances beyond their reasonable control. **When an attorney**, or an attorney's client, or a witness under the reasonable control of an attorney, **becomes unavailable for a duly scheduled event, then the attorney shall promptly notify opposing counsel and, where appropriate, court reporters, court personnel, and others involved in the event**.
>
>    .   .   .
>
>     (8)    When the Court is required to intervene, **the Court may render any or all of the following sanctions**

4

the written Rule 801 order WAS the contempt order.

[¶12]  It is worth noting that "Wyoming stands alone as the only jurisdiction to have a court rule that empowers district and circuit court judges to enforce standards of professional behavior on the part of lawyers who appear before them.  Rule 801 . . . has been in effect since January 1, 2013."  Mark W. Gifford, *Rule 801(a) Revisited: Court-Enforced Standards of Professional Behavior*, 45 Wyo. Law. 10 (2022).  We have not previously addressed the nature of a Rule 801 sanction.  Codifying the courts' authority to hold attorneys to certain standards of behavior does not change the inherent nature of the action taken by the court.  The substance of the court's order—its effect—prevails over its designation.[3]  *See Offutt v. United States*, 348 U.S. 11, 13–14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) ("[Fed. R. Crim. P.] 42(a) was not an innovation.  It did not confer power upon district judges not possessed prior to March 21, 1946.  'This rule,' the Advisory Committee on the rules of criminal procedure stated, 'is substantially a restatement of existing law.'" (citation omitted)).  Rule 801 is substantially a restatement of existing law.  The sanction under Rule 801 in this case was the indirect criminal contempt sanction.

[¶13]  The failure to adhere to the due process requirements of indirect criminal contempt[4] is a fatal jurisdictional defect.  *See supra* ¶ 10.

## *CONCLUSION*

[¶14]  The district court lacked jurisdiction to hold Mr. Goetz in indirect criminal contempt of court.  Reversed.

---

**against an attorney who is found, after notice and opportunity to be heard, to have violated this rule**:
> (a)  A formal reprimand;
> (b)  Monetary sanctions, including but not limited to the reasonable expenses, including attorney's fees, caused by the attorney's conduct; or
> (c)  Such other sanctions as the Court deems appropriate under the circumstances.

U.R.D.C. 801(a)(5), (8) (emphasis added).

[3] As eloquently noted by William Shakespeare, "What's in a name?  That which we call a rose, by any other name would smell as sweet."  William Shakespeare, *Romeo and Juliet* act 2, sc. 2.

[4] *See Horn*, ¶¶ 14, 22, 54 P.3d at 759, 761 (reversing for failure to comply with W.R.Cr.P. 42 contempt and W.R.C.P. 11 sanction procedures).

**FENN, Justice,** concurring in part and dissenting in part.

[¶15]   I agree with the majority that the district court's order must be reversed.  However, I reach that conclusion because the district court did not give Mr. Goetz notice he allegedly violated U.R.D.C. 801(a)(5), as required by U.R.D.C. 801(a)(8), before imposing the monetary sanction.  I believe this Court should decline to address whether the district court properly held Mr. Goetz in contempt, and I disagree with the majority's conclusion the monetary sanction the district court imposed under U.R.D.C. 801(a)(5) amounted to criminal contempt.

[¶16]   The resolution of this appeal only requires us to address the issue of whether the district court properly sanctioned Mr. Goetz under U.R.D.C. 801.  It does not require us to decide whether the monetary sanction imposed in the district court's oral ruling constituted civil or criminal contempt, nor does it oblige us to address whether an attorney's tardiness is direct or indirect contempt.  The interests of judicial restraint counsel us to save these issues for another day.  "Judicial restraint, after all, usually means answering only the questions we must, not those we can." *Haskell v. State*, 2018 WY 85, ¶ 18 n.3, 422 P.3d 955, 961 n.3 (Wyo. 2018) (quoting *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1094 (10th Cir. 2010)).  It is only necessary for us to decide whether the district court acted properly under U.R.D.C. 801.  I agree with the majority that it did not.  We should not go further and address any issues regarding the oral contempt ruling. *See City of Laramie v. Univ. of Wyo.*, 2024 WY 13, ¶ 42, 542 P.3d 607, 621 (Wyo. 2024) (quoting *MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 17, 465 P.3d 405, 410 (Wyo. 2020) (Kautz, J., concurring)) ("[T]he 'cardinal principle of judicial restraint' is 'if it is not necessary to decide more, it is necessary not to decide more.'"); *see also Horn*, 2002 WY 138, ¶ 18, 54 P.3d at 760 (declining to decide whether the appellant had been held in direct or indirect contempt after finding the contempt order could not stand because the district court failed to follow the proper procedures set forth in W.R.Cr.P. 42).

[¶17]   Although it is unnecessary to do so, the majority ventures beyond deciding the U.R.D.C. 801 issue and addresses Mr. Goetz's arguments regarding the district court's oral contempt ruling.  A prerequisite for any appeal is the entry of a final appealable order. *See, e.g.*, W.R.A.P. 1.03 (requiring the notice of appeal to identify the judgment or appealable order(s) being appealed); W.R.A.P. 1.05 (defining "appealable order"); W.R.A.P. 2.01 (stating the appeal "shall" be taken within 30 days from the "entry of the appealable order"); *Jones v. Young*, 2024 WY 64, ¶¶ 7–15, 550 P.3d 91, 92–94 (Wyo. 2024) (dismissing an appeal due to the lack of a final appealable order).  In this case, the district court never entered a written order holding Mr. Goetz in either civil or criminal contempt.  The only written order the district court entered was the *Order Sanctioning Defendant's Counsel*, which sanctioned Mr. Goetz under U.R.D.C. 801(a)(5) and 801(a)(8)(b).

[¶18]   Although we have never directly addressed this issue, other jurisdictions have recognized that while contempt orders may be effective immediately, they must be reduced

to writing before they can be appealed. *See State v. Sims,* 441 P.3d 262, 269 (Wash. 2019) ("While the effective appeal of a contempt order necessitates a written order, it does not follow that an oral order imposing sanctions is ineffective until reduced to writing. Appellate review is sufficiently preserved by the ability to remand for entry of written findings . . . ."); *Mondy v. Magnolia Advanced Materials, Inc.*, 815 S.E.2d 70, 78, 80 (Ga. 2018) (stating if a judge's order made in open court is intended to take effect immediately, it is effective against the parties immediately, but an oral contempt ruling generally cannot be appealed until it is reduced to writing, signed by the judge, and filed by the clerk). The requirement for a written order recognizes a "judgment or order of contempt is generally subject to further orders of the court and is subject to amendment or modification by the rendering court to correct errors or meet the court's intention." 17 C.J.S. Contempt § 157 (May 2025 Update); *see also Sims*, 441 P.3d at 268 (stating a court may modify a written or oral contempt order to meet the intent of the court); *Mondy*, 815 S.E.2d at 78 ("[U]ntil an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment.").

[¶19]   We have in other circumstances recognized an oral ruling takes effect as soon as it is made on the record, even before a written judgment is entered. In *Blake v. Rupe*, we considered whether an oral order granting a continuance of the deadline for a district court to determine a motion for a new trial under Rule 59(f) of the Wyoming Rules of Civil Procedure (W.R.C.P.) effectively extended the deadline to file a notice of appeal when no written order continuing the deadline was ever entered. 651 P.2d 1096, 1111–18 (Wyo. 1982) (superseded by statute on other grounds as stated in *Palm-Egle v. Briggs*, 2024 WY 31, ¶ 33, 545 P.3d 828, 838 (Wyo. 2024)). We concluded it did. 651 P.2d at 1118. We noted:

> [N]owhere in any of these rules appears any requirement that the order of continuance referred to must be in writing, labeled "continuance" and signed by the district judge, or even so written and signed by anyone else. The only critical requirements are that there be a continuance based upon an order and that the total time from date of judgment for determination not exceed ninety days.

651 P.2d at 1111. In contrast to W.R.C.P. 59(f), Rule 42 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.) expressly requires a written judgment of contempt to be signed by the judge and entered of record. *See* W.R.Cr.P. 42(b), (c)(6). Similarly, W.R.C.P. 54 and 58 require a civil judgment, which is defined as "any order from which an appeal lies," to be signed by the court and filed with the clerk. Regardless of whether the district court intended to hold Mr. Goetz in civil or criminal contempt at the change of plea hearing, it never signed a written judgment of contempt that was entered of record.

7

[¶20]   We have recognized "[u]ntil a final order is entered, a court is free to change its mind." *Pond v. Pond*, 2009 WY 134, ¶ 12 n.1, 218 P.3d 650, 653 n.1 (Wyo. 2009) (citing *Forbis v. Forbis,* 2009 WY 41, ¶ 8, 203 P.3d 421, 423 (Wyo. 2009)) (holding the decision letter was superseded by the final order because it was not incorporated into the final order). "Therefore, it is only the district court's language in the final order that is pertinent." *Id.* In this case, the district court's oral ruling holding Mr. Goetz in "contempt" was superseded by the written order sanctioning him under U.R.D.C. 801.  Consequently, there is no final appealable order holding Mr. Goetz in contempt, and the district court's oral ruling is irrelevant to our resolution of this appeal. *See Mary's Bake Shoppe v. City of Cheyenne*, 2008 WY 116, ¶ 22, 193 P.3d 252, 258 (Wyo. 2008) (finding an original notice and order of condemnation was irrelevant to the appeal because it had been superseded by an emergency condemnation order); *United States v. Hall*, 176 F.2d 163, 168 (2d Cir. 1949) (stating the oral rulings holding the appellants in contempt were superseded by the written judgments); 4 C.J.S. *Appeal and Error* § 71 (May 2025 Update) ("An attempt to appeal an order is moot when it is superseded and replaced with another order").

[¶21]   Despite the lack of a final appealable order holding Mr. Goetz in contempt, the majority not only decides the district court's oral ruling constituted criminal contempt rather than civil contempt, but it also declares an attorney's tardiness should be classified as indirect contempt rather than direct contempt.  Other jurisdictions are split on this issue. *Compare Cross Guns v. Eight Judicial Dist. Court*, 396 P.3d 133, 138–39 (Mont. 2017) (holding failure to appear at a hearing is direct contempt), *and Kandel v. State*, 250 A.2d 853, 854 (Md. 1969) (holding the unjustified failure of an attorney to appear in court on time is direct contempt), *with Bank of New York v. Moorings at Edgewater Condo. Ass'n. Inc.,* 79 So. 3d 164, 167 (Fla. Dist. Ct. App. 2012) (holding an attorney's failure to appear at a court proceeding is indirect criminal contempt), *and Rogers v. Super. Ct. in & For Pima Cnty,* 410 P.2d 674, 676 (Ariz. 1966) (holding an attorney's absence from a court hearing constitutes indirect contempt).

[¶22]   The majority attempts to circumvent the lack of a final appealable order by summarily finding the order sanctioning Mr. Goetz under U.R.D.C. 801 "WAS the contempt order," even though the order never uses the word contempt, apparently because the monetary sanction entered in this case was punitive in nature. *See* ¶¶ 10, 12.  This conclusion is not supported by our well-known rules of statutory interpretation and construction.

> First, statutory construction is a matter of law; second, we are seeking legislative intent; third, we construe a statute only if it is ambiguous, with the question of ambiguity being a question of law; and fourth, a statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. In addition, a basic tenet of statutory construction is that omission of words from a

> statute is considered to be an intentional act by the legislature, and this [C]ourt will not read words into a statute when the legislature has chosen not to include them.

*Hugus v. Reeder*, 2022 WY 13, ¶ 8, 503 P.3d 32, 34 (Wyo. 2022) (citation modified). "We do not interpret a statute in a way that renders a portion of it meaningless." *Conrad v. Uinta Cnty. Republican Party*, 2023 WY 46, ¶ 20, 529 P.3d 482, 491 (Wyo. 2023) (citation modified). "Once a statute is determined to be clear and unambiguous, 'there is no room for construction, and a court may not look for and impose another meaning.'" *Hugus,* ¶ 9, 503 P.3d at 35 (quoting *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015)). The Court applies the principles of statutory interpretation when determining the meaning of court rules. *Loyning v. Potter*, 2024 WY 82, ¶ 9, 553 P.3d 128, 131 (Wyo. 2024) (citing *Raczon v. State*, 2021 WY 12, ¶ 8, 479 P.3d 749, 751 (Wyo. 2021)).

[¶23]  U.R.D.C. 901 authorizes district courts to impose several types of sanctions for violations of the Rules:

> The following may be imposed for violation of these rules:
> (1) Reprimand;
> (2) Monetary sanctions;
> (3) Contempt;
> (4) Striking of briefs or pleadings;
> (5) Dismissal of proceedings;
> (6) Costs;
> (7) Attorney fees; or
> (8) Other sanctions.

U.R.D.C. 901 (LexisNexis 2025). Finding a monetary sanction imposed for a violation of the U.R.D.C. is the same as contempt renders subsection (2) of U.R.D.C. 901 meaningless and violates our rules of statutory interpretation. *See Conrad*, 2023 WY 46, ¶ 20, 529 P.3d at 491. The fact that monetary sanctions are listed separately from contempt in U.R.D.C. 901 indicates they are not the same thing.

[¶24]  Further, the majority's conclusion that the imposition of non-compensatory monetary sanctions amounts to criminal contempt overlooks the various sources from which a court derives its authority to issue sanctions. *See* ¶¶11–12. A court's power to "impose sanctions against recalcitrant lawyers" comes from numerous sources including statutes, rules, and common law. *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1446 (11th Cir. 1985); *see also United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L. Ed. 259 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution. . . . To fine for contempt—imprison for contumacy—inforce [sic] the observance of order, &c. are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others: . . ."). We have recognized

9

courts have the inherent authority to enforce their orders through sanctions. *See Fleet v. Guyette*, 2020 WY 78, ¶ 51, 466 P.3d 812, 825 (Wyo. 2020) (holding courts have inherent and statutory authority to enforce their orders through civil contempt sanctions); *Dollarhide v. Bancroft*, 2010 WY 126, ¶¶ 22–25, 239 P.3d 1168, 1175–76 (Wyo. 2010) (holding courts have inherent powers beyond those specified in rules and statutes that are absolutely necessary to the courts' ability to perform the functions for which they were created, including the power to impose sanctions); *Terry v. Sweeney*, 10 P.3d 554, 558 n.5 (Wyo. 2000) (citation modified) (holding the following sanctions have their basis in the concept of the court's inherent authority: punishment for contempt; dismissal for lack of prosecution; sanction to ensure fair and impartial trial; discipline of counsel for failure to comply with pretrial conference orders; sanction for violation of sequestration order; and entry of default judgment.). In *Glatter v. American National Bank of Powell*, we recognized a court has the inherent power to discipline counsel for failure to comply with its pretrial orders, including by dismissing the case without prejudice. 675 P.2d 642, 644 (Wyo. 1984). However, we stated "[o]rdinarily that discipline should involve lesser sanctions than dismissal of the case, such as taxation of costs or **some other penalty**." *Id.* (citing 9 Wright & Miller, Federal Practice and Procedure: Civil § 2369, p. 196.) (emphasis added).

[¶25] In addition to the district court's inherent powers, or perhaps in recognition of those powers, U.R.D.C. 901 and 801 explicitly authorize a district court to impose monetary sanctions in certain circumstances. The comment to U.R.D.C. 801 indicates passage of the rule was intended to "obviate a wide variety of motions that result in unnecessary demands upon the Court's time and resources . . . [and] provide incentive enough to eliminate the misconduct at which it was directed." U.R.D.C. 801 cmt. The comment further expressed hope that it would "rarely" be necessary for a court "to sanction an attorney for conduct in violation of this rule." *Id.* As the majority recognizes, we have not had the chance to analyze sanctions issued under U.R.D.C. 801. *See* ¶ 12. However, as discussed below, other jurisdictions have held non-compensatory monetary sanctions imposed for the failure to comply with court rules or for abusive litigation tactics do not constitute criminal contempt or require compliance with procedures such as those set forth in W.R.Cr.P. 42.

[¶26] In a case not too dissimilar from the one presently before the court, a circuit court judge in Hawaii summarily sanctioned an attorney $500 for being tardy for portions of a jury trial. *Wong v. Frank*, 833 P.2d 85, 88 (Haw. Ct. App. 1992). The Intermediate Court of Appeals of Hawaii found the judge did not follow the proper procedure to summarily hold the attorney in criminal contempt. *Id.* at 88–92. However, if the court had given the attorney notice and an opportunity to be heard, it could have imposed the monetary sanction for the attorney's tardiness under Rule 15(b) of Rules of the Circuit Courts, which stated an attorney who was tardy or failed to appear for court "may be subjected to 'such discipline as the court deems appropriate.'" *Id.* at 91–93 (quoting HI R. Cir. Ct. 15(b)). The Intermediary Court of Appeals also found the trial court could have imposed the

monetary sanction under a statute that codified the court's inherent power to manage its affairs to achieve the orderly and expeditious disposition of cases. *Id.*

[¶27]  Similarly, in *Miranda v. Southern Pacific Transportation Company*, the Ninth Circuit discussed a local rule that existed in the Central District of California at that time that allowed a court to impose "appropriate discipline," including monetary sanctions, for failing to comply with the court's local rules. 710 F.2d 516, 518, 521 (9th Cir. 1983).  In *Miranda*, the trial court imposed a monetary sanction of $250 for counsel's untimely filing of a pretrial memorandum. *Id.* at 519.  The Ninth Circuit upheld the sanction, finding the court had the authority to impose sanctions for violations of the local rules. *Id.* at 520.  It also held imposing a minor monetary sanction on counsel was "considerably less severe than holding counsel in contempt, referring the incident to the client or bar association, or dismissing the case." *Id.* at 521.

[¶28]  While the majority's opinion seems to focus almost exclusively on the punishment component of the district court's U.R.D.C. 801 order, the punitive nature of a sanction is not dispositive.  In *Harrison v. Board of Regents of University of New Mexico*, the district court imposed $100,000 in non-compensatory monetary sanctions against the Board of Regents for pressuring the plaintiff's expert to withdraw from the case. 311 P.3d 1236, 1238–39 (N.M. Ct. App. 2013).  The appellant asserted the sanctions could not stand because they were purely punitive in nature. *Id.* at 1241.  The Court of Appeals for New Mexico rejected that argument and upheld the sanctions as an exercise of the district court's inherent authority to impose non-compensatory monetary sanctions, despite having a punitive effect, to "ensure compliance with the proceedings of the court" and "prevent abusive litigation practice and preserve the integrity of the judicial process." *Id.* at 1240, 1243–44.

[¶29]  Although there is a split in authority, some federal courts allow non-compensatory monetary sanctions to be imposed under Rule 37 of the Federal Rules of Civil Procedure 37 (F.R.C.P.) without a finding of contempt, even though the sanctions have a punitive component. *See J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 356–60 (D. Conn. 1981) (holding the imposition of a $150 fine on counsel was an appropriate sanction for a violation of F.R.C.P. 37 without amounting to contempt); *Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24, 27 (D. Mass. 1991) (holding F.R.C.P. 37 permits the imposition of a sanction in the form of a monetary fine paid to the court without a finding of contempt); *but see Hathcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 42 (4th Cir. 1995) (holding $5,000 sanction imposed under Rule 37 was criminal contempt).  While the Supreme Court of the United States has not resolved this conflict, it has held "Rule 37 sanctions must be applied diligently both 'to **penalize** those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S. Ct. 2455, 2463, 65 L. Ed. 2d 488 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) (*per curiam*))

11

(emphasis added). In *Roadway*, the Supreme Court of the United States also recognized "[t]he power of a court over members of its bar is at least as great as its authority over litigants[,]" and a court could assess fees and expenses "against counsel who willfully abuse judicial processes" after "fair notice and an opportunity for a hearing on the record." *Id.* at 766–67, 96 S. Ct. at 2464.

[¶30] Similarly, other courts have held non-compensatory monetary sanctions imposed on attorneys for violations of Rule 11 of the rules of civil procedure are not criminal in nature and do not require criminal contempt proceedings. In *Dona Ana Savings & Loan Association, F.A. v. Mitchell*, the New Mexico Court of Appeals held:

> Policy considerations and fundamental differences between a monetary sanction for a Rule 11 violation and an infraction for criminal contempt mandate against following criminal contempt procedures for Rule 11 violations. A Rule 11 sanction is imposed when an attorney has unjustifiably failed to carry out a responsibility as an officer of the court, whereas an infraction for criminal contempt, for which both attorneys and members of the public can become liable, is an affront to the authority of the court. The power to impose Rule 11 sanctions springs from a different source than does the power to punish for criminal contempt. To uniformly follow criminal contempt procedures whenever contemplating imposing Rule 11 sanctions would, by increasing litigation, without corresponding benefit, be counterproductive to the goals of Rule 11.

113 N.M. 576, 578, 829 P.2d 655, 657 (N.M. Ct. App. 1991) (citation modified); *see also Isaacson v. Manty*, 721 F.3d 533, 538 (2013) ("Rule 9011 and Rule 11 contemplate the imposition of civil sanctions that are non-compensatory."); *Donaldson v. Clark*, 819 F.2d 1551, 1558–59 (11th Cir. 1987) ("A violation of Rule 11 is fundamentally different from an infraction of criminal contempt and therefore warrants different sanction proceedings.").

[¶31] That same reasoning applies here. A sanction under U.R.D.C. 801 is imposed when an attorney violates the "Standards of Professional Behavior" set forth in the Rule, which include an obligation to "appear on time for all duly scheduled events involved in the adjudicative process, unless excused or detained by circumstances beyond their reasonable control." U.R.D.C. 801(a)(5). The power to impose monetary sanctions under U.R.D.C 801, even though punitive in nature, springs from a different source than the power to punish criminal contempt. *Compare* U.R.D.C. 901 and 801 *with* W.R.Cr.P. 42. To require a district court to follow the strictures of W.R.Cr.P 42's indirect criminal contempt procedures whenever contemplating imposing monetary sanctions under U.R.D.C. 801 or 901 would increase litigation without a corresponding benefit and be counterproductive to

12

the goals of U.R.D.C. 801. *See Dona Ana Sav. & Loan Ass'n, F.A.,* 829 P.2d at 657. Requiring the district court to hold separate proceedings that require an arraignment and the possible disqualification of the judge at whom the rule violation was directed before a district court could issue even a trivial monetary sanction to "punish" or deter violations of the U.R.D.C. would strip district courts of the power to do that which is "absolutely necessary" to "ensure civility, orderly procedure, respect for the court as an institution and for its orders[.]" *Dollarhide*, 2010 WY 126, ¶ 22, 239 P.3d at 1175 (citation modified); *see also* W.R.Cr.P. 42(c)(4),(5).

[¶32]   Although the district court imposed a non-compensatory monetary sanction in this case under U.R.D.C. 801, that sanction did not amount to criminal contempt.  Instead, the district court had authority under its inherent powers and U.R.D.C. 901 and 801 to impose a monetary sanction for Mr. Goetz's tardiness.  However, the district court did not notify Mr. Goetz he was being charged with a violation of U.R.D.C. 801 or give him an opportunity to respond to that allegation prior to issuing the sanction, as required by U.R.D.C. 801(a)(8).  Therefore, I agree the district court's order must be reversed due to a lack of notice, but I disagree with any ruling saying the monetary sanction constitutes criminal contempt.